1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8    GUADALUPE CASTILLO,                    Case No.  5:20-cv-04395-EJD
                    Plaintiff,
9                                           **ORDER GRANTING IN PART AND
           v.                               DENYING IN PART DEFENDANTS'
10                                          MOTION TO DISMISS**
     CITY OF WATSONVILLE, et al.,
11                                          Re: Dkt. No. 15
                    Defendants.
12

13          In the early morning hours of November 24, 2018, Robert Castillo ("Mr. Castillo")

14   committed suicide after police officers from the City of Watsonville took him into custody on an

15   involuntary psychiatric hold.  His mother, Plaintiff Guadalupe Castillo ("Plaintiff"), has filed suit

16   against the City of Watsonville ("City"), Chief of Police for the City of Watsonville David Honda

17   ("Chief Honda") (collectively, "Defendants"), and several other city employees, alleging that they

18   failed to have appropriate training along with policies and procedures in place to summon or

19   provide necessary medical treatment for Mr. Castillo.  Defendants' Motion to Dismiss Plaintiff's

20   claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is presently before the Court.  For the

21   reasons stated below, Defendants' Motion is GRANTED in part and DENIED in part.

22   **I.    BACKGROUND**

23          **A.    Complaint Allegations**

24          The following facts are derived from Plaintiff's allegations in the operative Complaint

25   ("Compl."), Dkt. No. 1, which generally must be treated as true at the pleading stage.  *See Maya v.*

26   *Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

27   Case No.: 5:20-cv-04395-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
28   DISMISS
                                                1

United States District Court
Northern District of California

1   The decedent, Robert Castillo, began to express suicidal thoughts during the day prior to

2   committing suicide.  Compl. ¶ 22.  After refusing a voluntary admission for psychiatric services,

3   Mr. Castillo continued expressing suicidal ideation.  *Id.* ¶ 23.  Concerned, his family called for

4   emergency psychiatric help on November 23, 2018, at which point officers from the City of

5   Watsonville Police Department arrived at Mr. Castillo's home.  *Id.* ¶ 24.  Officers were told that

6   Mr. Castillo was expressing suicidal ideation and that he seemed determined to hurt himself.  *Id.*

7   Officers then detained Mr. Castillo for a 72-hour psychiatric hold pursuant to California Welfare

8   & Institutions Code § 5150.  *Id.* ¶ 25.  The next morning, the Santa Cruz Sherriff's Office

9   informed Mr. Castillo's family that he had walked into traffic on purpose in an apparent suicide.

10  *Id.* ¶¶ 28-30.

11   Plaintiff's claims are based in part on Defendants' (1) failure to ensure Mr. Castillo

12  received medical attention, despite being a threat to himself and (2) improper release of Mr.

13  Castillo from their custody.  *See id.* ¶¶ 36-37.  Plaintiff alleges that Defendants had a policy and

14  practice of failing to provide adequate care to mentally ill individuals and civil detainees.

15  Specifically, the Complaint states that the City has been on notice, since at least May 2018, that its

16  response to persons in a mental health crisis is inadequate and that it had an inability to accurately

17  track mental health calls for services or their outcomes.  *Id.* ¶ 40.  Plaintiff further alleges that the

18  City has failed to train its officers in crisis intervention.  *Id.* ¶ 49.

19   **B.   Procedural Background**

20   Plaintiff states that the Watsonville Police Department "stonewalled" family members for

21  months as they tried to get information about where Mr. Castillo was transported for a psychiatric

22  evaluation.  *Id.* ¶ 32.  It was not until July 1, 2019, that Plaintiff obtained a copy of the Coroner's

23  Report which indicated that Mr. Castillo was transported to a Telecare psychiatric facility for self-

24  surrender, but he was never admitted at the facility.  *Id.* ¶ 33.  Plaintiff contacted the facility to

25  obtain Mr. Castillo's medical records but there was no record of him being at the facility on

26  November 23 or 24, 2018.  *Id.* ¶ 34.  On December 31, 2019, Plaintiff submitted a government tort

27

28  Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1    claim and an Application for Leave to Submit a Late Claim with the City. *Id*. ¶ 18, 20. The City

2    returned the claim without action on January 17, 2020 and never responded to the Application for

3    Leave to Submit a Late Claim. *Id*. ¶ 21.

4         In June 2020, Plaintiff filed the instant action on behalf of herself and as heir to Mr.

5    Castillo's estate. Dkt. No. 1. The Complaint contains four claims: (1) a claim under 42 U.S.C. §

6    1983 for failure to protect from harm in violation of the decedent's 14th Amendment rights, styled

7    as a "survival action"; (2) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's right of

8    familial association; (3) a claim for failure to furnish/summon medical care in violation of

9    California Government Code §§ 844.6 and 845.6; and (4) a wrongful death action under California

10   Code of Civil Procedure § 377.60. All four claims are brought against Defendants and 25 Doe

11   employees of the Watsonville Police Department. *See* Compl. ¶¶ 11-14.

12        On August 3, 2020, Defendants moved to dismiss the entire Complaint under Federal Rule

13   of Civil Procedure 12(b)(6). Dkt. No. 15 ("Mot."). The Motion has been fully briefed, Dkt. Nos.

14   21 ("Opp."), 22 ("Reply"), and is now ripe for the Court's ruling.

15   **II.    MOTION TO DISMISS STANDARD**

16        Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the

17   claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must

18   provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds

19   upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must

20   also be "plausible on its face," allowing the court to "draw the reasonable inference that the

21   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The

22   plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

23   possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic

24   recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

25        Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim

26   upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge

27   Case No.: 5:20-cv-04395-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint.  *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).[1]

## III.    DISCUSSION

As an initial matter, Defendants argue the Complaint should be dismissed because Plaintiff has combined individual 42 U.S.C. § 1983 claims with *Monell* claims and have "deprive[d] Defendants of a plain understanding of the allegations against them."  Mot. at 6.  While the Complaint does not label the first or second claim as a *Monell* claim, the preceding paragraphs detail the City's policies and insufficient training of its officers.  Compl. ¶¶ 39-49.  Plaintiff has thus provided Defendants with sufficient notice of the allegations against them and what Plaintiff has placed at issue.

The Complaint describes Plaintiff's first claim against Defendants as a survival action for failure to protect from harm.  However, Plaintiff then states in her Opposition that *Monell* liability is being claimed.  Opp. at 8-9.  Based on the allegations made against Defendants and Plaintiff's assertions in the Opposition, the Court views Plaintiff's first claim as one for municipal and supervisorial liability pursuant to § 1983.

---

[1] The Complaint cites to a research paper, "Police Response to Mental Health-Related Calls for Service in the City of Watsonville: A Process Evaluation of the City of Watsonville's Plan to Assist Their Officers When Responding to Citizens with Mental Health Issues," when discussing the care provided to mentally ill civil detainees by Defendants.  Because Plaintiff necessarily relies on the research paper and the authenticity of it is not in dispute, the Court will consider the research paper under the "incorporation by reference" doctrine.

Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

4

1    Section 1983 provides a private right of action against constitutional violations made under

2   color of state law.  To state a claim under § 1983, a plaintiff must allege two elements: (1) that a

3   right secured by the Constitution or laws of the United States was violated and (2) that the

4   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

5   U.S. 42, 48 (1988).

6    Defendants move to dismiss the two § 1983 claims as well as the two state law claims

7   primarily on four grounds: (1) failure to state a claim against Chief Honda in either his official or

8   individual capacities; (2) failure to allege a legally cognizable claim under § 1983 based on a

9   vicarious liability theory; (3) failure to allege a *Monell* claim; and (4) failure to comply with the

10   California Tort Claims Act.  Each ground is addressed below.

11   **A.    First Claim Under 42 U.S.C. § 1983 Against Chief Honda**

12    Defendants insist that Plaintiff's § 1983 claims against Chief Honda must be dismissed for

13   two reasons.  First, they argue that any § 1983 claim asserted against him in his official capacity

14   must be brought against the City instead.  And second, Defendants claim there is no basis for

15   holding him liable in his individual capacity.  The Court agrees on both points.

16    A § 1983 "official capacity suit against a municipal officer is equivalent to a suit against

17   the entity."  *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799

18   (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  "When both a

19   municipal officer and a local government entity are named, and the officer is named only in an

20   official capacity, the court may dismiss the officer as a redundant defendant."  *Ctr. for Bio-Ethical*

21   *Reform*, 533 F.3d at 799 (internal citation omitted).  Because Plaintiff also names the City as a

22   defendant and brings a *Monell* style claim against it while not seeking injunctive relief, her claim

23   against Chief Honda in his official capacity is dismissed as redundant.

24    Nonetheless, a supervisory official such as Chief Honda may be individually "liable under

25   § 1983 so long as there exists either (1) his or her personal involvement in the constitutional

26   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

27

28   Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
Northern District of California

the constitutional violation." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal citation and quotation marks omitted).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).  Accordingly, "a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez*, 891 F.3d at 798 (internal citation and quotation marks omitted).

Here, the only allegations in the Complaint that speak to Chief Honda's potential liability are that he "is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Watsonville Police Department officers and DOES 1-25," and "is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts . . . were committed."  Compl. ¶ 12.  These allegations, however, do not indicate that Chief Honda was "directly involved in the allegedly unconstitutional conduct" which resulted in Mr. Castillo's death or that "he had knowledge of the constitutional deprivations and acquiesced in them."  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (concluding allegations that official policymaker responsible for the implementation of policies failed to state a claim for supervisory misconduct).  Rather, the Complaint makes conclusory allegations that Chief Honda promulgated unconstitutional policies and procedures which authorized the particular conduct and thus directly caused the officers' unconstitutional conduct.  This is insufficient to state a claim of supervisory liability against Chief Honda.

As to Chief Honda, the first claim is DISMISSED without leave to amend to the extent the claims are asserted against him in his official capacity and DISMISSED with leave to amend to the extent the claims are asserted against him in his individual capacity.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.     *Monell* Claim Against the City of Watsonville**

Plaintiff alleges that the City and its officers "fail[ed] to summon or provide [Mr.] Castillo with appropriate medical care"; fail[ed] to promulgate appropriate policies and procedures in order to summon treatment for detainees taken on a 5150 hold"; and "fail[ed] to appropriately train and/or supervise their staff."  Compl. ¶ 59.

Liability against a government entity starts from the premise that there is no *respondeat superior* liability under § 1983; this means no entity is liable simply because it employs a person who has violated a plaintiff's rights.  *See, e.g., Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978)); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Local governments can be sued directly under § 1983 only if the public entity maintains a policy or custom that results in a violation of plaintiff's constitutional rights.  *Monell*, 436 U.S. at 690-91.  To impose entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) the plaintiff possessed a constitutional right of which he or she was deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation.  *See Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The Ninth Circuit has explained:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).  The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1988)

United States District Court
Northern District of California

*overruled on other grounds by Bull v. City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy[.]" *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Here, Plaintiff first alleges that the City has been on notice since 2018 that its response to persons in a mental health crisis is inadequate and results in needless harm. In support of this allegation, Plaintiff cites to a 2018 research paper that focuses on the City's training and handling of mental-health calls. Compl. ¶¶ 41, 44. Plaintiff alleges that the City responded to 344 mental-health calls in 2017, and that as of November 2017, 45 (out of 75 alleged officers) had obtained Crisis Intervention Training. *Id*. Plaintiff also cites to an undated survey contained in the research paper reporting on the amount of mental health training 54 City officers had partaken in and how comfortable those officers felt responding to calls involving individuals with mental-health issues. *Id*. ¶¶ 46-48.

The Court finds that Plaintiff's allegations and the 2018 research paper, without more, fail to support a plausible *Monell* claim. Plaintiff has not pointed to any actual deficiencies in the practices or policies of the City other than saying that they are inadequate. Instead, Plaintiff focuses on the number of officers that received training in 2017 and officers' reported use of available resources when responding to mental health-related calls for service without saying more about how this is deficient. Plaintiff has also not alleged sufficient facts to support the ultimate conclusion that the City failed to provide training regarding crisis intervention or was deliberately indifferent to Mr. Castillo's needs. The Complaint is devoid of facts to support the contention that the City regularly provides an inadequate response to mentally ill individuals resulting in harm. The factual allegations relate exclusively to Mr. Castillo's experience; no other incidents resulting in harm are alleged.

To meet the deliberate indifference requirement, plaintiffs must put forth facts that show an

Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
8

United States District Court
Northern District of California

1  obvious need for training such that policymakers are put on notice that the particular omission is

2  "substantially certain to result in the violation."  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060,

3  1076 (9th Cir. 2016).  Plaintiff's experience, standing alone, is insufficient to establish that the

4  need to train was obvious.  Thus, Plaintiff does not allege facts from which it could be inferred

5  that City policymakers had actual or constructive notice that the alleged failure to train its officers

6  in crisis intervention was substantially certain to result in a Constitutional violation.  *See Tuttle*,

7  471 U.S. at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to

8  impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an

9  existing, unconstitutional municipal policy, which policy can be attributed to a municipal

10  policymaker.  Otherwise the existence of the unconstitutional policy, and its origin, must be

11  separately proved.").  Accordingly, Plaintiff fails to allege facts establishing a policy or "pattern of

12  similar violations" as is required to establish deliberate indifference when premised on a failure to

13  train.

14       Therefore, Plaintiff's first § 1983 claim for failure to protect from harm against the City is

15  DISMISSED with leave to amend.

16       **C.    Second Claim – Violation of Plaintiff's Right of Familial Relationship**

17       Next, the Court turns to Plaintiff's claim for violation of the right of familial relationship.

18  Parents have a "fundamental liberty interest" in "the companionship and society of their child or

19  parent" as a component of their substantive due process rights under the 14th Amendment.

20  *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *see also Lee*,

21  250 F.3d at 685 (9th Cir. 2001).  This right of familial association is further supported by the First

22  Amendment's guarantee of freedom of association.  *See Keates*, 883 F.3d at 1236; *Lee*, 250 F.3d

23  at 685.  Of relevance here, the Ninth Circuit has recognized that official conduct that deprives a

24  parent of the companionship and society of a decedent may constitute a constitutional violation.

25  *Lemire*, 726 F.3d at 1075.  The official conduct must "shock the conscience," which is a more

26  demanding standard than deliberate indifference.  *Id*.  Specifically, the Ninth Circuit has said that

27

28

1    deliberately indifferent conduct will generally "shock the conscience" if the defendant "had time

2    to deliberate before acting or failing to act in a deliberately indifferent manner."  *Id*.

3         In this case, the alleged deliberate indifference of City officials to Mr. Castillo's medical

4    needs, health, and safety could rise to a claim of interference with familial association if such

5    indifference "rise[s] to the conscience-shocking level."  *Id*.  But as the Court just held, the

6    Complaint fails to clear the lower bar of adequately alleging deliberate indifference; *a fortiori*, the

7    Complaint does not allege any official conduct that "shocks the conscience."  Accordingly, the

8    Court must also DISMISS Plaintiff's second claim for violation of the right of familial association.

9    Again, leave to amend is appropriate because Plaintiff may be able to allege further facts that

10   support her claim.

### D.    Third and Fourth Claims – Plaintiff's State Law Claims

12        Plaintiff brings state law claims for failure to furnish or summon medical care and a

13   wrongful death against Defendants.  Defendants argue that Plaintiff's state law claims should be

14   dismissed against Chief Honda for failing to adequately plead either state law claim and against

15   the City for non-compliance with the California Tort Claims Act.

**Chief Honda**

17        Defendants argue that both state law claims against Chief Honda fail because the

18   Complaint never alleges he had any personal involvement with Mr. Castillo.  Mot. at 11.

19   Plaintiff's Opposition fails to address this argument, or her state law claims against Chief Honda

20   generally.  Accordingly, the Court will treat the state law claims against Chief Honda as

21   abandoned.  *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir.2005) (plaintiff

22   abandoned two claims by not raising them in opposition to the County's motion for summary

23   judgment); *Green Desert Oil Group v. BP West Coast Prod.*, No. 11–02087 CRB, 2012 WL

24   555045, at *2 (N.D. Cal. Feb. 21, 2012) (complaint alleged many breaches of contract; defendant

25   moved to dismiss them all; plaintiffs defended only three of the alleged breaches in their

26   opposition and thus abandoned the rest); *Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198,

United States District Court
Northern District of California

1  2010 WL 841669, at *6 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in

2  opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims").

3  The question, then, is whether the Court should dismiss the claim with or without

4  prejudice.  In instances where a plaintiff simply fails to address a particular claim in its opposition

5  to a motion to dismiss that claim, courts generally dismiss it with prejudice.  *See In re Hulu*

6  *Privacy Litig.*, No. C 11–03764 LB, 2012 WL 2119193, at *3 (N.D. Cal. June 11, 2012)

7  (discussing case law on this issue).  Here, Plaintiff does not address the claims.  The Court thus

8  DISMISSES the state law claims against Chief Honda without Leave to Amend.

9  **City of Watsonville**

10  Before bringing a suit against a California state or local government entity, the California

11  Tort Claims Act ("TCA") requires the timely presentation of a written claim and the government

12  entity's rejection of it in whole or in part.  Cal. Gov't Code § 905; *Mangold v. California Pub.*

13  *Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (citing *Snipes v. City of Bakersfield*, 145

14  Cal. App. 3d 861 (1983)).  A claim related to a cause of action for personal injury must be filed or

15  presented to the public entity no later than six months after the cause of action accrues.  Cal. Gov't

16  Code § 911.2(a).  A plaintiff must allege facts demonstrating either compliance with the TCA

17  requirement or an excuse for noncompliance as an essential element of the claim.  *State of*

18  *California v. Superior Court* (*Bodde*), 32 Cal. 4th 1234, 1243–44 (2004).  Failure to allege

19  compliance or an excuse for noncompliance constitutes a failure to state a claim and subjects such

20  claims to dismissal.  *See id.*

21  Here, Plaintiff submitted her tort claim and Application for Late Claim Relief more than

22  one year after Mr. Castillo's death.  However, Plaintiff maintains that under the doctrine of

23  delayed discovery, the action is not time-barred because the TCA's accrual rule did not begin to

24  run until Plaintiff discovered or had reason to discover the alleged injury in the first instance.

25  Under California law, "[a]n exception to the general rule for defining the accrual of a cause of

26  action—indeed, the 'most important' one—is the discovery rule."  *Norgart v. Upjohn Co.*, 21 Cal.

27

28  Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

4th 383, 397 (1999) (citation omitted).  As Plaintiff argues, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.*; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).  More specifically, "in actions where the rule applies, the limitations period does not accrue until the aggrieved party has [actual or constructive] notice of the facts constituting the injury." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007) (citing *Fox*, 35 Cal. 4th at 807).  For purposes of accrual of the limitations period, inquiry notice can be triggered by suspicion.  *Id.* at 1319 (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.")).

Defendants argue that Plaintiff cannot avail herself of the delayed discovery rule because "Plaintiff conducted no investigation whatsoever."  Reply at 6.  Defendants further argue that attempts by family members to get information from the City's police department about where officers took Mr. Castillo "[do] not demonstrate a diligent investigation," and that therefore the "delayed discovery exception is unavailable to [Plaintiff].  *Id.* at 6-7.

Defendants' argument misses the mark, however, as it focuses on actions Plaintiff purportedly should have taken at a time when Plaintiff alleges she had no actual or constructive notice of her claim—that is, no knowledge or reason to suspect any injury.  As the California Supreme Court explained in *Fox*, "plaintiffs are [only] required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808.  Notably, therefore, Plaintiff is not charged with knowledge of information that would have been revealed by an investigation if and when, as she alleges, there was no apparent reason to conduct such an investigation in the first instance.  Accordingly, absent an alleged reason to suspect injury associated with Mr. Castillo's suicide, the fact that Plaintiff does not provide an explanation of any diligence she took after the death of Mr. Castillo to investigate further the events that led up to his

suicide is irrelevant. *See id.* at 803 ("[U]nder the discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause...." (emphasis added)).  To the extent that Defendants are arguing that Plaintiff actually knew or should have known of the alleged injury before July 1, 2019, that is a question of fact that is not appropriately decided at the pleading stage, where the Court's inquiry is limited to reviewing and accepting as true the allegations in Plaintiff's Complaint.  Indeed, "[r]esolution of the statute of limitations issue is normally a question of fact." *Fox*, 35 Cal. 4th at 810 (citation omitted); *see also Bastian v. Cty. of San Luis Obispo*, 199 Cal. App. 3d 520, 527 (1988) ("Once belated discovery is pleaded, the issue of whether plaintiff exercised reasonable diligence in discovering the negligent cause of the injury is a question of fact.").

As the California Supreme Court explained in *Fox*, "to rely on the discovery rule for delayed accrual of a cause of action [at the pleading stage], '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Fox*, 35 Cal. 4th at 808 (citing *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)).  Furthermore, "[i]n assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" *Id.* (citing *McKelvey*, 74 Cal. App. 4th at 160).

With respect to the first "discovery rule" prong under *Fox*—adequately pleading the time and manner of discovery—the complaint is quite specific and clear.  Plaintiff alleges that after months of trying to get information about where Defendants' police officers took Mr. Castillo, she was able to obtain the Coroner's Report in July 2019 which revealed where he was taken after being detained.  Compl. ¶¶ 33-34.  It was only after this that she was able to call the psychiatric facility and learn that Defendants' police officers failed to summon medical care for Mr. Castillo. *Id.* at ¶ 35.  Plaintiff then filed her government tort claim within six months of that date. *Id.*  All

1  of these allegations are pled in some detail and with sufficient particularity, including relevant

2  dates.

3  　　　The Court also finds that Plaintiff sufficiently pled allegations to demonstrate an inability

4  to have made earlier discovery despite reasonable diligence.  *See Fox*, 35 Cal. 4th at 808.  Plaintiff

5  has not alleged any "circumstances that should have alerted [her] to [her] injury," whether "at

6  [D]efendant[s'] hands" or otherwise.  *E-Fab*, 153 Cal. App. 4th at 1325-26.  Specifically, Plaintiff

7  asserts that the City's police department refused to provide her with a copy of the incident report

8  and that her family was "stonewalled" for months when trying to get information.  Compl. ¶¶ 26,

9  32.  To the extent Defendants contest these allegations, this is a matter best determined with the

10  benefit of a factual record, not on the pleadings.

11  　　　Accordingly, Plaintiff has sufficiently alleged facts in the Complaint to support a finding

12  that she did not discover, and she did not have the opportunity to discover, Defendants' alleged

13  wrongdoing until July 1, 2019.  Thus, Defendants' Motion to Dismiss Plaintiff's state law claims

14  against the City of Watsonville is DENIED.

## IV.　CONCLUSION

16  　　　For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and

17  DENIED in part as follows:

18  　　• 　Defendants' Motion to Dismiss as to Plaintiff's First Claim is GRANTED as to Defendants

19  　　　　City of Watsonville and Chief Honda in his individual capacity with leave to amend and

20  　　　　GRANTED as to Defendant Chief Honda in his official capacity without leave to amend;

21  　　• 　Defendants' Motion to Dismiss as to Plaintiff's Second Claim is GRANTED as to

22  　　　　Defendants City of Watsonville and Chief Honda in his individual capacity with leave to

23  　　　　amend and GRANTED as to Defendant Chief Honda in his official capacity without leave

24  　　　　to amend;

25  　　• 　Defendants' Motion to Dismiss as to Plaintiff's Third Claim is DENIED as to Defendant

26  　　　　City of Watsonville and GRANTED as to Defendant Chief Honda without leave to amend;

27

28

United States District Court
Northern District of California

- Defendants' Motion to Dismiss as to Plaintiff's Fourth Claim is DENIED as to Defendant City of Watsonville and GRANTED as to Defendant Chief Honda without leave to amend

Plaintiff may file an amended complaint curing the deficiencies discussed herein by October 20, 2020.  Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: September 29, 2020

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-04395-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

15